96 | 415
102 | 210

STATE OF MAINE

*vs.*

INTOXICATING LIQUORS, AND MAINE STEAMSHIP COMPANY AND MAINE CENTRAL RAILROAD COMPANY, Claimants.

Androscoggin.    Opinion April 28, 1902.

*Intox. Liquors.    Interstate Commerce.    Const. Law.    R. S., c. 27, § 31.
Stat. of U. S. Aug. 8, 1890.*

Upon a seizure of intoxicating liquors by the sheriff under R. S., c. 27, § 31, it appeared by the shipping receipt given to the consignor by the claimant, the Maine Steamship Co., at the time it received the liquors in New York for shipment, that they were to be transported to Lewiston, in this state, over the Grank Trunk Railway. By mistake, however, the through way-bill made by the claimant, and which accompanied the liquors, directed their transportation to Lewiston over the Maine Central Railroad. They were accordingly shipped there over the latter line, and at the time of their seizure were in the warehouse of the Maine Central Railroad Co., at its station in Lewiston, awaiting the order of the consignee, and some three-quarters of a mile away from the station of the Grand Trunk Railway in that city.

*Held;* that neither the right of the consignee to refuse to receive the liquors at the Maine Central station, nor the right of the claimant to recall them and, so far as possible, rectify its mistake by shipping them to Lewiston over the Grand Trunk Railway, can affect the question of whether the liquors still retained their character as articles of interstate commerce. Nothing had been done by either the consignee or the claimant looking to the exercise of such a right on the part of either. The status of the liquors is fixed by the facts existing at the time of their seizure, and not by future possibilities.

*Held;* further, that the liquors having been transported into this state to their place of ultimate destination, designated upon the through way-bill accompanying them, and there remaining for storage to await the orders of the consignee, their transportation as articles of interstate commerce had terminated, and that they had arrived within the state, so as to be subject to the operation and effect of the laws of this state, within the meaning of the Act of Congress of Aug. 8, 1890, known as the "Wilson Act."

Agreed statement on appeal by claimants from the Lewiston municipal court, in a search and seizure process under R. S., c. 27, against certain intoxicating liquors deposited in the freight-house of the Maine Central Railroad Company in Lewiston. Condemnation sustained.

The case appears in the opinion.

*W. B. Skelton,* county attorney, for state.

*W. H. White and S. M. Carter,* for Me. Cent. R. R. Co.

*J. W. Mitchell,* for Me. Steamship Co., claimant.

The contract for shipment of the goods was a lawful contract, one which the Maine Steamship Company might properly make. A refusal to accept the goods for transportation would have rendered the Steamship Company liable in damages. *Bowman* v. *Chicago, etc., R. R. Co.,* 125 U. S. 465; *Rhodes* v. *Iowa,* 170 U. S. 412; *Vance* v. *Vandercook Company,* 170 U. S. 438.

The liquors in question were not liable to seizure under the statutes of this state until the contract for carriage had been completed by the arrival of the goods at their destination, to wit,—at the Grand Trunk Station in Lewiston. *Rhodes* v. *Iowa,* supra; *Vance* v. *Vandercook Company,* supra; *State* v. *Intoxicating Liquors, and Grand Trunk Ry. Co. of Canada, Claimant,* 94 Maine, 335.

The state's process for their seizure before the contract for shipment had been completed was void. *State* v. *Intoxicating Liquors, Boston & Maine Railroad, Claimant,* 83 Maine, 158.

The contract for shipment had not been completed at the time the goods were seized. Transportation had been interrupted by the goods having been sent by the wrong route.

·SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

POWERS, J. This case comes to the law court on the following agreed statement of facts and copies of the record and papers therein referred to, and of the joint class rate and commodity tariff between the Maine Steamship Company and Grand Trunk Railway in effect at the time, and duly filed with the Interstate Commerce Commission.

"The three barrels of wine and the two kegs of brandy concerned in the case were shipped from New York, July 14, 1900, by through way-bill over lines of Maine Steamship Company and Maine Central Railroad Company, hereto annexed, having been received there by the Maine Steamship Company, as per shipping receipt, also annexed. They were way-billed by the Maine Central Railroad Company, instead of the Grand Trunk Railway as per shipping receipt, by mistake of Maine Steamship Company. Grand Trunk Railway Company and Maine Steamship Company had through freight rates from New York to Lewiston.

"The keg of alcohol and the two kegs of whiskey were shipped from Boston, Massachusetts, to Lewiston, Maine, via Boston & Maine Railroad and Maine Central Railroad Company prior to July 19, 1900.

"All of said liquors were received at the 'Upper Station,' so-called, being the station designated in the way-bills and one of the stations of the Maine Central Railroad Company in Lewiston, unloaded from the car or cars, containing the same and placed in the railroad company's warehouse before eight o'clock in the forenoon of July 19, 1900, there to await the order of the consignee or consignees. They remained in said warehouse, as aforesaid, until eleven o'clock in the forenoon of the following day, when they were seized by John F. Carrigan, a deputy sheriff of the county of Androscoggin, by virtue of the complaint and warrant thereto annexed, and subsequent proceedings taken, as appears from the papers and records specifically made a part thereof. Said liquors were intended by the consignee for unlawful sale within the state of Maine. The consignee had received no notice of arrival of goods.

"The 'Upper Station,' so-called, of the Maine Central Railroad Company, is situated about three-quarters of a mile from the station of the Grand Trunk Railway.

"It is claimed by the Maine Steamship Company and the Maine Central Railroad Company that the seizure of said liquors was illegal in that it was in violation of the third clause of § VIII, of the first article of the constitution of the United States and the acts of Congress thereunder."

VOL. XCVI 27

The claim of the Maine Central Railroad Company has been abandoned ; and there only remains for consideration the claim of the Maine Steamship Company to the three barrels of wine and two kegs of brandy.    The foundation of this claim is that, according to the shipping receipt given by the claimant to the consignor, the liquors were to be shipped to Lewiston over the Grand Trunk Railway, but by mistake they were shipped to Lewiston over the Maine Central Railroad, unloaded from the cars, and placed in the railroad company's warehouse to await the order of the consignee ; that therefore the act of transportation had not ceased, and the liquors were still under the protection of the interstate commerce clause of the federal constitution, because the consignee might refuse to receive them at the station of the Maine Central Railroad, or the claimant might see fit to correct its mistake, recall the liquors and ship them again to Lewiston over the Grand Trunk Railway.

We cannot give our assent to such a proposition.    Undoubtedly the consignee might refuse to accept the goods at the station of the Maine Central Railroad.    In the absence of contract or custom fixing the place of delivery by the carrier, delivery must be made at the carrier's depot at the place of destination, or if by the shipping receipt or bill of lading the goods are to be shipped over a connecting line, the place of delivery is the depot of such connecting line at the place of destination.    Undoubtedly, also, the claimant might recall the goods, and so far as possible rectify its mistake by shipping them to Lewiston over the Grand Trunk Railway, in accordance with its contract with the consignor.   But neither of these possibilities had ripened into a fact at the time the liquors were seized, and nothing had been done by either the consignee or the claimant looking to the exercise of such a right on the part of either.    As well might it be claimed that liquors which at the time of their seizure are intended for unlawful sale in this state are not subject to seizure and condemnation, on the ground that the holder or owner might change his mind, a right which he unquestionably has, and decide to keep them for his own consumption.    Their status is fixed by the facts as they existed at the time of their seizure, and not by future possibilities.    The liquors were shipped to Lewiston accom-

panied by a through way-bill, which called for their transportation over the Maine Central Railroad. They had been transported to the precise place to which the claimant, who undertook to transport them, directed that they should be transported. The way-bill which accompanied them, and which was made by the claimant, required them to go just where they did go, and no farther. They had been there unloaded, and were in the warehouse awaiting the order of the consignee. The act of transportation had terminated, and they were subject to the operation and effect of the laws of this state. *State* v. *Intox. Liquors,* 95 Maine, 140. As was there said by Chief Justice WISWELL : "We fully recognize that the question as to whether a state statute is in contravention of any provision of the federal constitution is for the final determination of the federal supreme court." We know of no decision, however, of that court which holds that liquors which have been transported into the state, to the place of ultimate destination designated upon the through way-bill accompanying them, and there remaining for storage to await the orders of the consignee, are not subject to the operation and effect of the laws of this state, within the meaning of the act of Congress of August 8, 1890, known as the "Wilson Act." In the absence of such a decision we do not feel disposed to adopt a construction of that act which does not commend itself to our judgment, and which, with collusion between the shipper and carrier, would afford practically unlimited opportunities for the successful evasion of the laws of this state.

The claims of the Maine Central Railroad and of the Maine Steamship Company are disallowed.

The liquors are declared forfeited, and are to be disposed of by the sheriff in accordance with the provisions of our statutes.

*So ordered.*